IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

INTEGRATED PROCESS ENGINEERS
& CONSTRUCTORS, INC.,

                    Plaintiff,

    v.                                                                        OPINION and ORDER

NOVO NORDISK PHARMACEUTICAL                                                20-cv-435-jdp
INDUSTRIES, INC., and FLUOR
ENTERPRISES, INC.,

                    Defendants.

---

Plaintiff Integrated Process Engineers & Constructors, Inc., or IPEC, is suing defendants Novo Nordisk Pharmaceutical Industries, Inc., and Fluor Enterprises, Inc. for failing to pay more than $1 million for pharmaceutical equipment that IPEC manufactured in Wisconsin and shipped to defendants in North Carolina. Defendants have filed a joint motion in which they contend that the case doesn't belong in Wisconsin for four reasons: (1) this court lacks personal jurisdiction over both defendants; (2) venue is improper in this district; (3) it doesn't serve the convenience of the parties or the interest of justice to litigate the case in this district; and (4) a forum selection clause requires the case to be litigated in North Carolina. Dkt. 8. For the reasons explained below, the court rejects each of these contentions and will deny defendants' motion to dismiss or transfer the case.

ANALYSIS

A. **Personal jurisdiction**

The plaintiff has the burden to show that the court may exercise personal jurisdiction over each defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th

Cir. 2003). Generally, this requires the plaintiff to show that an exercise of jurisdiction is consistent with both state law and the Due Process Clause. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). But in this case, defendants don't dispute IPEC's contention that it has satisfied the requirements in Wis. Stat. § 801.05(1)(d), (3), (4), and (5) for exercising jurisdiction, so the court will focus on the Due Process Clause. *See Carrington v. Experian Holdings, Inc.*, — F. Supp. 3d. —, No. 19-cv-398-jdp, 2020 WL 3507797, at *1 n.2 (W.D. Wis. June 29, 2020) (defendant waives contention that state law doesn't authorize exercise of personal jurisdiction by failing to raise the issue).

The Supreme Court has identified two types of personal jurisdiction: general and specific. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 415 nn. 8, 9, 10 (1984). IPEC contends that it can satisfy the requirements of both types of jurisdiction, but the court concludes it can exercise specific jurisdiction over defendants, so the court need not consider general jurisdiction.

A court may exercise specific jurisdiction if the plaintiff shows that: (1) the defendant purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the state; and (2) the plaintiff's alleged injury arose out of the defendant's forum-related activities. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 398 (7th Cir. 2020).[1] The plaintiff can't rely on the defendant's "random, fortuitous, or attenuated

---

[1] If the plaintiff makes that showing, the burden shifts to the defendant to show that an exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Curry*, 949 F.3d at 402 (internal quotation marks omitted). Defendants don't discuss that requirement, so the court need not consider that issue either. *See Carrington*, 2020 WL 3507797, at *2 n.3.

contacts [with the forum state], or . . .  the unilateral activity of another party or third person."

*Id.* at 396.

IPEC's claim in this case arises out of a March 2017 purchase order for pharmaceutical equipment.[2] IPEC alleges that it manufactured and shipped the equipment to defendants, but defendants paid only a portion of the promised price. In contending that an exercise of specific jurisdiction is appropriate for both defendants, IPEC points to the following contacts that defendants had with Wisconsin:

- Since 1999, both defendants have placed approximately 50 orders with IPEC, which is a Wisconsin corporation and has its principal place of business in Fort Atkinson, Wisconsin.

- All of defendants' orders were placed with IPEC at its Fort Atkinson facility.

- All of the products that defendants ordered from IPEC have been manufactured in Fort Atkinson.

- After defendants' orders were manufactured, they were shipped from Wisconsin to defendants in North Carolina.

- Defendants have sent all payments for the products they purchased to Wisconsin.

- Acting on behalf of Novo, Fluor initiated the March 2017 purchase order by soliciting a "request for quotation" from IPEC in Wisconsin.

- Fluor, acting as Novo's agent, submitted the March 2017 purchase order at issue in this case to IPEC's Fort Atkinson facility.

- Defendants modified the March 2017 order multiple times.

- Representatives from defendants visited IPEC's Fort Atkinson facility four times in 2016 and early 2017 "to discuss and assess IPEC's capabilities in relation to the proposed project" that was the basis for the March 2017 purchase order. Dkt. 12, ¶ 20.

---

[2] IPEC doesn't describe the equipment in the complaint except to say that it was "equipment to be used to produce pharmaceutical products." Dkt. 3-1, ¶ 16.

- After Fluor submitted the purchase order, representatives for defendants visited the Fort Atkinson facility at least eleven times for reasons related to "the project." *Id.*, ¶ 21.

- Defendants sent payments for the March 2017 purchase order to Fort Atkinson.

Neither side describes the relationship between the two defendants or the nature of the project they were working on together in North Carolina.[3] But both sides treat defendants as a unit for the purpose of personal jurisdiction, such that the contacts of one defendant can be imputed to the other defendant. The court will follow the parties' lead and assume that the jurisdictional question is the same for both defendants.

The facts alleged by IPEC support the exercise of personal jurisdiction over defendants. By itself, a contract with a state resident doesn't "automatically" establish a basis for exercising jurisdiction. *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 761 (7th Cir. 2008). Instead, the court must consider all of the circumstances surrounding the contract, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

In this case, the surrounding circumstances alleged by IPEC are that defendants had a long-term, ongoing relationship with a Wisconsin company; defendants knew that the products they purchased were manufactured in Wisconsin; it was defendants who solicited IPEC's business in Wisconsin; and defendants visited Wisconsin multiple times for reasons related to

---

[3] A website for Fluor states: "Fluor was awarded an engineering, procurement, construction and construction management contract by Novo Nordisk for its new Active Pharmaceutical Ingredient (API) manufacturing facility in Clayton, North Carolina. . . . The facility will produce pharmaceutical ingredients for diabetes medicines, providing modern treatment to people with diabetes in the U.S. and around the world." https://www.fluor.com/projects/novo-nordisk-manufacturing-facility.

the purchase order. Both this court and the court of appeals have found that an exercise of personal jurisdiction was appropriate under similar circumstances. *See Citadel Group,* 536 F.3d at 761–64 (contract between the parties involved "continuing obligations and repeated contacts" in forum state); *Madison Consulting Group v. South Carolina,* 752 F.2d 1193 (7th Cir. 1985) (defendants initiated contractual relationship with Wisconsin business and defendants knew that the plaintiff would perform most of the work on the contract in Wisconsin); *Flambeau, Inc. v. GDL Brokerage, Inc.,* No. 19-cv-359-jdp, 2019 WL 6877564, at *3 (W.D. Wis. Dec. 17, 2019) (the parties had "a long-term business relationship, during which [the defendant] had substantial contacts with" the forum state). *See also Daniel J. Hartwig Assocs. v. Kanner,* 913 F.2d 1213, 1218–19 (7th Cir. 1990) (whether the defendant solicited the plaintiff's services is "significant" in the minimum-contacts analysis).

The parties' relationship in this case was not simply an isolated purchase, where the location of the plaintiff was "random" or "fortuitous." *See Curry*, 949 F.3d at 398. Rather, defendants purposefully availed themselves of the benefits of doing business in Wisconsin by choosing to maintain a long-term contractual relationship with a Wisconsin business, buying products that they knew were made in Wisconsin, and visiting Wisconsin multiple times. All of these contacts were related to the purchase order that is the basis for IPEC's claim. Under these circumstances, defendants' alleged "refusal to make the contractually required payments in [Wisconsin] . . . caused foreseeable injuries to [IPEC] in [Wisconsin]," so "it was, at the very least, presumptively reasonable for [defendants] to be called to account there for such injuries." *Burger King*, 471 U.S. at 479–80.

Defendants don't deny that they had all of the contacts cited by IPEC. Instead, defendants contend that their contacts are irrelevant because they had an agreement with IPEC

5

that required the parties to try their disputes in North Carolina. But that's a different question. The court will consider the validity and scope of the forum selection clause in a later section of the opinion, but even if the court assumes that the forum selection clause applies to this case, such a clause is enforced through a motion to transfer under 28 U.S.C. § 1404(a). *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). A forum selection clause doesn't deprive a court of jurisdiction. *See Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 389 n. 6 (1st Cir. 2001) ("[E]ven a mandatory forum-selection clause does not in fact divest a court of jurisdiction that it otherwise retains." (citing cases)). This conclusion follows from *Atlantic Marine*, in which the Court rejected the view that a forum selection clause was irrelevant to determining proper venue under 28 U.S.C. § 1391(b). 571 U.S. at 57 ("[V]enue is proper so long as the requirements of § 1391(b) [the venue statute] are met, irrespective of any forum-selection clause."). If a forum selection clause doesn't affect the venue analysis, then it doesn't affect the jurisdictional analysis either.

In their reply brief, defendants contend that *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979), forecloses an exercise of personal jurisdiction in this case. In *Lakeside*, the court of appeals held that Wisconsin lacked personal jurisdiction over a West Virginia-based defendant who ordered "structural assemblies" from the Wisconsin-based plaintiff without ever having set foot in Wisconsin. *Id.* at 598.

*Lakeside* can't carry the day for defendants. To begin with, the court of appeals has acknowledged that *Lakeside* was decided before *Burger King* and other Supreme Court cases that clarified the scope of personal jurisdiction in a commercial context, *see Citadel Grp.,* 536 F.3d at 763, and that *Lakeside* "has been on the receiving end of a good bit of distinguishing analysis, and even criticism, in the years since it was decided." *N. Grain Mktg., LLC v. Greving*, 743 F.3d

487, 493–94 (7th Cir. 2014). The court hasn't overruled *Lakeside*, but the court "treats *Lakeside* as marking something of a borderline for a no jurisdiction finding." *Id.* at 494.

The facts of this case are readily distinguishable from *Lakeside*, where the defendant's *only* contact with the forum state was a single contract solicited by the *plaintiff*. As noted above, *Citadel Group* and *Madison Consulting Group* are more on point because it was defendants who solicited IPEC's business and because the purchase order was more than just a single transaction but rather involved an ongoing relationship and multiple trips by defendants to Wisconsin.

Defendants also contend that IPEC can't rely on the parties' previous business relationship, calling it "irrelevant" to the jurisdictional analysis. Dkt. 15, at 8. It is true that "it is only the dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (citation and quotation marks omitted) (emphasis omitted). But "[r]eal world commercial interactions are rarely neatly-compartmentalized by particular contract." *Id.* When parties engage in an ongoing commercial relationship involving multiple contracts and repeated transactions over time, courts look to whether the forum contacts "either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract" in dispute. *Id. See, e.g., Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) (concluding that the parties "entire course of contact" with respect to a business endeavor were relevant to the minimum-contacts analysis, and rejecting defendant's attempt to "dissect[ ]" their dealings "into two purportedly unrelated events").

In this case, the long history of the parties' relationship is relevant to showing that defendants' contacts with the state were not "random" or simply a product of IPEC's

"unilateral" conduct. Rather, defendants chose to repeatedly do business with a Wisconsin company for nearly 20 years, knowing that the products it was purchasing were being manufactured in Wisconsin. Defendants' March 2017 purchase order was simply a continuation of that long-running relationship. But even if all of defendants' previous contacts with Wisconsin are disregarded, defendants' other contacts—including their solicitation of the March 2017 purchase order and their multiple visits to Wisconsin—are still more than sufficient to provide a basis for exercising personal jurisdiction.

The ultimate question in any case involving personal jurisdiction is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (internal quotation marks omitted). In light of the substantial nature of both the quantity and quality of defendants' contacts with Wisconsin and the close connection of those contacts with IPEC's claim, defendants could have reasonably anticipated that they could be sued in Wisconsin. So the court finds that an exercise of personal jurisdiction over defendants is appropriate in this case.

**B. Venue**

Defendants contend that venue is improper in the Western District of Wisconsin because this district doesn't meet any of the criteria in the venue statute, 28 U.S.C. § 1391(b). But that's incorrect. Under § 1391(b)(2), venue is proper in any district where a "substantial part of the events or omissions giving rise to the claim occurred." In this case, the products at issue were manufactured in this district, communications related to the purchase order occurred in or were directed to this district, and defendants were to send payments for the purchase order to this district. Those facts all support a conclusion that a "substantial part" of relevant events occurred here. *See Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d

870, 877 (N.D. Ill. 2015) (in breach of contract case, relevant factors under § 1391(b)(2) include where the conduct underlying the breach occurred, where performance under the contract was to take place, and whether there was failure to make payment in a district pursuant to a contract); *Nat'l Tech., Inc. v. Repcentric Sols.*, No. 13 C 1819, 2013 WL 3755052, at *6 (N.D. Ill. July 16, 2013) ("Courts have also considered where meetings took place in order to consummate a contractual relationship."); *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1016 (E.D. Wis. 2000) ("In contract cases courts have held that the delivery or non-delivery of goods and the payment or non-payment of money were significant events providing a basis for venue in the district where they were to occur."). Defendants cite no contrary authority. So the court will deny defendants' motion to dismiss for improper venue.

## C.  Transfer under § 1404

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Defendants separate their argument under § 1404 from their argument that the case should be transferred in accordance with a forum selection clause. That's the wrong approach. Section 1404(a) is the mechanism for enforcing a forum selection clause in federal court. *See Atl. Marine*, 571 U.S. at 59. So the court will consider § 1404 and the forum selection clause together.

Under *Atlantic Marine*, the first step is to determine the validity and scope of the forum selection clause. *See High Tech Nat'l, LLC v. Wiener*, No. 119CV02489SEBMJD, 2019 WL 6329654, at *7 (S.D. Ind. Nov. 26, 2019); *ACD Distribution, LLC v. Wizards of the Coast, LLC*, No. 18-cv-658-jdp, 2018 WL 4941787, at *1 (W.D. Wis. Oct. 12, 2018). Defendants rely on

a document titled "Attachment C," which includes the following clause: "This Purchase Order shall be subject to the law and jurisdiction of the State of North Carolina unless expressly designated otherwise in the Purchase Order." Dkt. 9-3, at 2. IPEC contends that the forum selection clause doesn't require transfer for three reasons: (1) the document defendants cite isn't signed by IPEC and defendants haven't shown that it applies to the March 2017 purchase order; (2) the document isn't signed by Novo, so it couldn't apply to IPEC's claims against Novo, and it doesn't make sense to split the claims; and (3) even if the clause applies, it is permissive rather than mandatory, so it doesn't require transfer.

"In contracts containing a choice of law clause, . . . the law designated in the choice of law clause [is] used to determine the validity of the forum selection clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775 (7th Cir. 2014). Under North Carolina law, defendants have the burden of proving the existence of a valid contract. *See Lake v. State Health Plan for Teachers & State Employees*, 264 N.C. App. 174, 188, 825 S.E.2d 645, 656. But defendants ignored this burden in their opening brief, failing to explain why Attachment C governs this case. In fact, neither Attachment C nor the copy of the purchase order that defendants filed with their motion were signed by IPEC. *See* Dkt. 9-1 and 9-3. Defendants filed a signed version of the purchase order with their reply brief. Dkt. 15-1. And they contended for the first time in reply that the purchase order incorporated the terms of Attachment C and that IPEC's claims against Novo are governed by the forum selection clause because Novo is a third-party beneficiary of the purchase order. But that was too late; evidence cited or arguments raised for the first time in a reply brief are forfeited. *See Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 636 (7th Cir. 2018); *Black v. TIC Investment Corp.*, 900 F.2d 112, 116 (7th Cir. 1990).

10

Even in their reply brief, defendants don't respond to IPEC's contention that the forum selection clause permits litigation in North Carolina but doesn't require it because the clause doesn't use terms such as "exclusive" or "sole" that ordinarily accompany a mandatory clause. *See Halifax Linen Serv., Inc. v. Tidelife, LLC,* No. 19-cv-55-d, 2019 WL 2812412, at *4 (E.D.N.C. July 2, 2019) (declining to enforce forum selection clause despite use of the word "shall" because "the forum-selection clause at issue in this case does not use any terms of exclusion such as 'sole' or 'exclusive,' and a reference to a specific court alone does not convert a permissive forum-selection clause into a mandatory one"). In the absence of any argument from defendants on the question whether the forum selection clause is mandatory or permissive, the court declines to enforce it. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.,* 884 F.3d 463, 470 (4th Cir. 2018) (presumption of enforcement applies only to mandatory forum selection clauses).

Without the forum selection clause, it becomes defendants' burden to show under § 1404 that it would be "clearly more convenient" to litigate the case in North Carolina. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). Defendants haven't made that showing. They say that it would be more convenient for *them* to litigate the case in North Carolina, but that's not enough in a situation like this one in which Wisconsin is more convenient for IPEC. *See Research Automation, Inc. v. Schrader Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer.").

Defendants' only other asserted reasons for transfer are that: (1) the Eastern District of North Carolina has fewer cases than the Western District of Wisconsin; and (2) North Carolina law will govern any disputes about the purchase order. Docket congestion is a relevant

11

consideration under § 1404, *see id.*, but the average time to disposition and trial is *less* in the Western District of Wisconsin than in the Eastern District of North Carolina, the district where the defendants want the case to be transfered.[4] And even if the court assumes that North Carolina law will apply to the parties' dispute, that on its own isn't enough to require transfer. *See Atl. Marine Const.*, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit.").

Defendants haven't shown that the Eastern District of North Carolina is clearly more convenient or that the interest of justice favors a transfer there. Under these circumstances, IPEC's choice of forum is entitled to deference. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

## D. Conclusion

Defendants chose to solicit the business of a Wisconsin company and then visited the state multiple times as part of that relationship, so personal jurisdiction and venue are proper in this district. Although it might be more convenient for defendants to litigate in North Carolina, defendants haven't shown that transfer is required under § 1404. The case will proceed in the Western District of Wisconsin.

---

[4] Average time to disposition is 8.7 months in the Eastern District of North Carolina and 7.4 months in the Western District of Wisconsin; average time to trial is 51.3 months in North Carolina and 24.3 months in Wisconsin. *See* "United States District Courts — National Judicial Caseload Profile," *available at* https://www.uscourts.gov/sites/default/files/data_tables/ fcms_na_distprofile0630.2020.pdf.

ORDER

IT IS ORDERED that the motion filed by defendants Novo Nordisk Pharmaceutical

Industries, Inc., and Fluor Enterprises, Inc., to dismiss, or, in the alternative, to transfer the

case to the Eastern District of North Carolina Dkt. 8, is DENIED.

Entered October 7, 2020.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge
